UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLOS ECHEVARRIA AND LAKEENYA
MARTIN,

                         Plaintiffs,                                13cv 1729

        -against-                                    **COMPLAINT**

THE CITY OF NEW YORK, and OFFICER
(FNNK) MACK, OFFICER (FNNK) NUÑEZ,
OFFICER (FNNK) MONROE, and JOHN DOES
#1-3, each in their individual capacities,

                         Defendants.

Demand for Jury Trial
------------------------------------------------------------X

Plaintiffs Carlos Echevarria and Lakeenya Martin, by and through their attorneys LeBow &
Associates, PLLC, complain of the Defendants, and each of them, as follows:

## I. PRELIMINARY STATEMENT

Plaintiffs Carlos Echevarria and Lakeenya Martin bring this action under 42 USC §§1983 and
1988 to redress Defendants' violations of their Constitutional rights. Defendants other than the
City of New York were New York City police officers acting under the color of state law.

Plaintiffs allege that Defendants Officer (FNNK) Mack, Officer (FNNK) Nuñez, Officer
(FNNK) Monroe, and John Does #1-3 unlawfully detained and arrested them without probable
cause. The Plaintiffs therefore assert causes of action against Defendants Mack, Nuñez, Monroe,
and Does #1-3 for false arrest and false imprisonment.

Plaintiffs assert a claim against the City of New York based upon entity liability, and allege that
the City of New York maintained certain policies, customs, and practices regarding the hiring,

training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiffs and others, and that directly and proximately caused the violations of Plaintiffs' Fourth Amendment rights complained of herein.

Plaintiffs seek compensatory damages from Defendants Mack, Nuñez, Monroe, and Does #1-3 and the City of New York, and punitive damages from Defendants Mack, Nuñez, Monroe, and Does #1-3.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the civil rights claims asserted herein against Defendants Mack, Nuñez, Monroe and Does #1-3 and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3).  Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Southern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiffs Carlos Echevarria and Lakeenya Martin resided together at 225 East 149th Street, Apartment 26D, Bronx, NY 10451 and were citizens of the United States.

3. At all times relevant herein, Defendant Mack was a police officer employed by the New York Police Department ("NYPD") and assigned to the 40th Precinct in the Melrose neighborhood of Bronx, New York.

4. At all times relevant herein, Defendant Nuñez was a police officer employed by the NYPD and assigned to the 40th Precinct.

5. At all times relevant herein, Defendant Monroe was a police officer employed by the NYPD and assigned to the 40th Precinct.

6. At all times relevant herein, Defendants Does #1-3 were police officers employed by the NYPD and assigned to the 40th Precinct.

7. At all times relevant herein, the City of New York was a municipal corporation existing under the laws of the State of New York.  As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline, and conduct of the officers it employs.

## IV. STATEMENT OF FACTS

8. At all times relevant herein, Plaintiff Carlos Echevarria and Lakeenya Martin were citizens of the United States residing at 225 East 149th Street, Apartment 26D, Bronx, NY 10451.

9. At all times relevant herein, Defendant Mack was an NYPD officer assigned to the 40th Precinct.

10. At all times relevant herein, Defendant Nuñez was an NYPD officer assigned to the 40th Precinct.

11. At all times relevant herein, Defendant Monroe was an NYPD officer assigned to the 40th Precinct.

12. At all times relevant herein, Defendants Does #1-3 were NYPD officers assigned to the 40th Precinct.

13. On or about 7:00 PM on or about August 28, 2011, in the aftermath of Hurricane Irene, Plaintiffs were cleaning up water in their apartment.

14. On information and belief, at or around 7:00 PM, uniformed NYPD officers Defendants Mack, Nuñez, Monroe, and Does #1-3 approached Plaintiffs' apartment, knocked loudly on Plaintiffs' front door, and demanded that Plaintiffs open the door.

15. On information and belief, Plaintiff Echevarria opened the door slightly.  Without stating their purpose, Defendants Nuñez and Doe #1 asked Echevarria if he would open the door fully and if he would answer their questions.  Echevarria refused both requests.

16. On information and belief, uniformed officers Defendants Nuñez and Doe #1 then demanded that Plaintiff Echevarria show them his hands.  Echevarria then showed Defendants Nuñez and Doe #1 his hands, at which time Defendants Nuñez and Does #1-2 yanked Plaintiff Echevarria by his hands and pulled him into the hall, slammed him against the wall, restrained his neck and put him in handcuffs, all without stating their purpose or justification.

17. On information and belief, Plaintiff Martin then asked uniformed officers Defendants Mack, Nuñez, Monroe, and Does #1-3 why they were arresting Echevarria.  Defendant Mack, who was wearing a white shirt and thus likely had a supervisory role, stated in sum and substance that Defendants Mack, Nuñez, Monroe, and Does #1-3 had received complaints of residents in the building throwing garbage out of the window, and that they knew it was Plaintiffs who were throwing garbage out of the window.

18. On information and belief, Plaintiff Martin showed Defendant Mack Plaintiffs' garbage bags, which were kept by Plaintiffs' front door, to show that Plaintiffs were not throwing garbage out of the window.  Nonetheless, Defendant Nuñez would not release Plaintiff Ecehvarria.

19. On information and belief, Defendants Mack, Nuñez and Monroe then entered Plaintiffs' apartment and began searching the apartment, without a warrant and without consent from Plaintiffs.

20. On information and belief, Plaintiff Martin asked Defendants Mack, Nuñez and Monroe why they were inside Plaintiffs' apartment without Plaintiffs' permission, and Defendant Mack stated in a confrontational manner, that the Defendants could do whatever they wanted to.

4

21. On information and belief, Defendant Mack at this time assumed a confrontational physical pose very close to Plaintff Martin, who was not fully dressed.  Because of these circumstances, Plaintiff Martin asked Defendant Mack to stand back, at which time Defendant Mack ordered Defendant Monroe to handcuff and arrest Plaintiff Martin, which he did.

22. On information and belief, Defendants Does #1-3 detained Plaintiffs in Plaintiffs' building hallway in handcuffs for some time while Defendants Mack, Nuñez and Monroe searched Plaintiffs' apartment, searching through Plaintiffs' drawers and closets and personal items.  In a drawer, Defendant Mack found cash totaling approximately $18,000, which Plaintiff Echevarria and his mother had been saving in order to move out of their neighborhood.  Defendant Mack confiscated this money, and Defendants Mack, Nuñez, Monroe and Does #1-3 took Plaintiffs to the 40th Precinct.

23. On information and belief, at no time throughout this ordeal were Plaintiffs read their Miranda rights.  Plaintiffs asked uniformed officers Defendants Mack, Nuñez, Monroe and Does #1-3 several times to tell Plaintiffs why they were being arrested or what they were being charged with, and Defendants Mack, Nuñez, Monroe and Does #1-3 ignored Plaintiffs' questions.

24. On information and belief, at the 40th Precinct, Plaintiffs were placed into separate holding cells.  A narcotics officer questioned Plaintiff Echevarria about the seized money.  The officer did not read Plaintiff Echevarria his Miranda rights, and continued to ask questions after Plaintiff Echevarria demanded a lawyer, and after he stated that he did not intend to answer the officer's questions without a lawyer present.

25. On information and belief, on or about 3:00 AM, Plaintiffs were taken from the 40th Precinct to Central Booking and held there until approximately noon.  After being detained by the NYPD

for approximately seventeen hours, Plaintiffs were finally released from Central Booking, without charges and without ever being told what they were arrested for.

26. On information and belief, Plaintiff Echevarria had to return to the precinct approximately seven times before his money was returned approximately one week later.  While the money was confiscated, Plaintiff Echevarria had no money to live on.

## V. FIRST CAUSE OF ACTION -
## CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
## (Against Defendants Mack, Nuñez, Monroe, and Does #1-3)

27. Plaintiffs repeat, reiterate, and reaffirm each and every allegation contained in paragraphs 1 through 26 of this Complaint with the same force and effect as though fully set forth herein.

28. As a result of the actions of Defendants Mack, Nuñez, Monroe, and Does #1-3, which occurred on or about August 28, 2011, the Plaintiffs were deprived of their rights under the United States Constitution and federal civil rights law.  Plaintiffs' rights are secured by the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

29. The actions of Defendants Mack, Nuñez, Monroe, and Does #1-3 were committed under the color of law, and were intentional and willful.

30. On or about August 28, 2011, Defendants Mack, Nuñez, Monroe, and Does #1-3 intended to confine Plaintiffs.

31. On or about August 28, 2011, the Plaintiffs were conscious of being confined.

32. Plaintiffs never consented to being confined by Defendants Mack, Nuñez, Monroe and Does #1-3, but cooperated with them because they were NYPD officers acting in an official capacity.

33. On information and belief, Defendants had no reason to believe that it was Plaintiffs who threw garbage out of their window, since they did not see garbage come out of Plaintiffs' window, they did not have a report of garbage being thrown from Plaintiffs' window, and after entering

Plaintiffs' apartment, they were shown that Plaintiffs were keeping their garbage bags in their apartment.

34. Therefore, since Defendants had no reason to believe that it was Plaintiffs who threw garbage out of their window, and had no reason to believe that Plaintiffs had committed any other crime, they therefore did not possess knowledge sufficient for a reasonable person to believe that Plaintiffs were committing or had committed a crime at the time of their arrest.

35. In view of the fact that Defendants did not possess information upon which a reasonable person could have believed that Plaintiffs had committed or were committing a crime at the time of their arrest, Defendants did not have probable cause to arrest and confine the Plaintiffs.

36. Neither on nor about August 28, 2011, nor at any other relevant time herein, did Defendants Mack, Nuñez, Monroe and Does #1-3 possess a warrant for Plaintiffs' arrest and confinement.

37. Neither on nor about August 28, 2011, nor at any other relevant time herein, did a warrant for Plaintiffs' arrest and confinement exist.

38. In view of the fact that Defendants Defendants Mack, Nuñez, Monroe and Does #1-3 intended to confine Plaintiffs, Plaintiffs were conscious of their confinement, Plaintiffs did not consent to their confinement, and their confinement was not privileged since it was not conducted pursuant to a warrant or probable cause, Plaintiffs' confinement was therefore unlawful and actionable under 42 U.S.C. §1983.

39. The actions of Defendants Mack, Nuñez, Monroe and Does #1-3 amounted to false arrest and false imprisonment under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

40. As a direct and proximate result of Plaintiffs' false arrest and false imprisonment, Plaintiffs were caused to suffer a loss of freedom and liberty, great mental anguish, emotional distress, and

public humiliation, and were further caused to experience fear of physical harm and violence, and Echevarria experienced great hardship due to the confiscation of his money.

## VI. SECOND CAUSE OF ACTION-
## ENTITY LIABILITY
## (Against Defendant City of New York)

41. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 40 of this Complaint with the same force and effect as though fully set forth herein.

42. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of Plaintiffs' Fourth Amendment rights as alleged herein.

43. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to retaliate against certain individuals, to make arrests in order to advance their careers, to meet arrest quotas, or to gain media attention by arresting high-profile suspects.

44. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to make unlawful arrests.

45. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to make unlawful arrests, if those officers are properly supervised and disciplined they would almost always be deterred from making unlawful arrests due to the understanding that they would be held liable if they do so, and if those officers

8

were properly trained, they would be fully aware of (A) when it is legal to arrest a suspect and the proper procedures for carrying out an arrest, (B) their responsibilities under the law to make only lawful arrests justified by the available evidence, and (C) the consequences they would face for unlawful arrests.

46. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers making unlawful arrests would be the deprivation of the constitutional rights of citizens, such as unlawful arrests and wrongful imprisonment of citizens, thereby violating those citizens' Fourth Amendment rights.

47. In light of the fact that responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests, the obvious consequence would be that some officers would make unlawful arrests for various reasons other than achieving justice in accordance with the law, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiffs and other individuals who were unlawfully arrested.

48. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, Plaintiffs were falsely arrested, and sustained a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation.

49. As a result of the foregoing, Plaintiffs sustained the damages previously described, and seek compensatory damages from the City of New York.


WHEREFORE Plaintiffs demand judgment against each of Defendants Mack, Nuñez, Monroe and Does #1-3 in the amount of One Million Dollars ($1,000,000.00) in compensatory damages

and One Million Dollars ($1,000,000.00) in punitive damages on the first cause of action, and against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the second cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York                  Respectfully submitted,
       March 14, 2013                           LEBOW & ASSOCIATES, PLLC

                                            _____
                                            James B. LeBow, Esq. (JL4535)
                                            570 Lexington Avenue, 16th Floor
                                            New York, New York 10022
                                            Tel. (212) 868-3311
                                            Fax (646) 619-4555